SCHUMAKER vs. HOEVELER, impleaded with others.

ESTOPPEL—*In favor of A., set up by B., allowed in protection of A.'s interest.*
AMENDMENT—*Of complaint, to conform it to facts proven.*

1. Defendant, having a tax title to land on which plaintiff had a mortgage, entered into and retained possession after agreeing with the mortgagor's widow (who was entitled to possession by his will,) to accept possession from her, and to pay the mortgage, and by his words and acts induced her to suppose that he held under her, until the three years' limitation had expired. *Held*, that he was estopped as against the widow from denying that he held possession under her.

2. This estoppel might be set up by the plaintiff in an action to foreclose the mortgage, where that was the only way in which the widow's interest could be protected, the mortgage debt being payable out of personal property bequeathed to her, if not made out of the land.

3. The complaint setting up a different ground of estoppel (against an antici-
pated defense) from that proven, it was not error to allow an amend-
ment at the trial, making it conform to the facts, especially where the
estoppel might have been proven without having been alleged.

APPEAL from the Circuit Court for *Dane* County.

Action commenced in 1866, to foreclose a mortgage on
real property in the city of Madison.    The complaint
averred the following facts:   1. That Paul Berg and his
wife Adelaide, May 28, 1860, mortgaged the premises in
question to one Kemerling, to secure a note to him of same
date for $140 and interest; and the mortgage was duly
recorded about that time.   2. That on the 6th of July, 1861,
they executed a second mortgage, of the same premises, to
the plaintiff, to secure a note to him of that date, for $150,
with interest at 10 per cent., payable four years after date,
which mortgage was duly recorded in February, 1863, and is
the one in suit, the whole amount of principal and interest
remaining unpaid.   3. That said Paul afterwards died,
having, by his last will, devised and bequeathed all his real
estate and personal property to said Adelaide during her
life; but with authority to said Adelaide to sell and dispose
of the same as her own, if she should remain unmarried ten
years after his death.   4. That in the spring of 1863, defend-
ant purchased the Kemerling mortgage, and that on the
1st of July, 1863 (said Paul Berg being then dead, and his
will duly admitted to probate), Adelaide Berg gave up pos-
session of the premises to defendant, who immediately took
possession thereof as assignee of the Kemerling mortgage, and
has ever since received the rents and profits thereof.   5. That
in September, 1859, the premises were sold as for the non-
payment of the taxes of 1858, and in December, 1862, a tax
deed of the land was issued, and recorded the next day; and
the grantee therein, about 1st of May, 1863, quit-claimed
the premises to defendant, who bought the same to preserve

the lien of his Kemerling mortgage. 6. That said tax sale and tax deed were void for irregularities in the tax proceedings, viz: that no warrant for the collection of the taxes for that year had been issued, nor had the land been returned as delinquent, nor had any notice of the sale been posted up as required by law. 7. That said Adelaide was about to bring an action to annul the deed and recover possession of the property, before the expiration of three years from the recording of the deed, and so informed defendant, who thereupon assured her that the mortgage here in suit should not be prejudiced by said tax deed, and if she would not bring such action said mortgage should remain a lien, and he would pay the mortgage debt; and the plaintiff was also about to bring an action during said three years to set aside said tax deed, and had employed attorneys for that purpose, whereupon defendant made the same promise to him; and in consideration of, and reliance upon, said promises, said Adelaide and the plaintiff forebore to bring such actions before the three years expired. 8. That before commencing this action, plaintiff caused to be tendered to defendant the full amount due on the Kemerling mortgage, and also what he had paid for said tax claim, with interest, and also the amount paid by defendant for taxes on said property, after deducting from said sums the fair rents and profits thereof enjoyed by defendant during his said possession. 9. That said rents and profits have amounted to $200, or more. Judgment is therefore demanded that defendant pay plaintiff the amount due on his mortgage, and the costs of this action; or that the mortgaged property be sold, etc., and out of the proceeds of the sale there be paid defendant the amount due him on the Kemerling mortgage, less the rents and profits, and also the amount paid by him for tax title and taxes, and that from the residue of the proceeds plaintiff be paid his mortgage debt and costs of this action; and

that defendants, etc., may be foreclosed, etc.; and for general relief.

The answer avers that defendant took possession about the time stated in the complaint, and has ever since retained possession, *under his tax deed;* and sets up the bar of the statute against the plaintiff's allegations of irregularity in the tax proceedings. It also claims a lien upon the land for $405, spent in improvements, in case the tax deed should be avoided.

On the trial, Adelaide Berg testified that she saw defendant in November, 1863; he was then occupying the house on the premises; he said something to her about occupying the premises; she said he could have the house, but she could give him no deed; he said he would pay *Schumaker's* mortgage; she told him he could stay in the house as long as he chose, if he would pay the debts "hanging over it;" and in that case she would "have nothing more to do with it." This evidence was received against defendant's objection. On cross-examination, the witness said that "the particular talk about debts was the mortgage to plaintiff, a mortgage to Kemerling, and fifty dollars taxes;" that she came to Madison at that time to have writings drawn; that she did not have them drawn, because she was informed that she could not do so until ten years after the death of her husband; that she thereupon promised to deed the premises to defendant as soon as she had authority to do so, and he agreed to pay the mortgages before he got a deed. She further said that she "did not know whether she saw *Hoeveler* at Cross Plains." The plaintiff testified in his own behalf: "About three years ago *Hoeveler* told me about the conversation with Mrs. Berg; he wanted to buy my mortgage, and wanted me to throw off something; said he would take the house if he could make a bargain with me; said he would pay the mortgage without interest. I agreed to it.

He has not paid me." On cross-examination, he said: "*Hoeveler* told me he had agreed with Mrs. Berg that he should have the property if he would make it right with me. I saw him about three weeks afterwards, and he said he would only pay me $100. I agreed to take $150. He wanted to buy it, and not pay it; said he would come some day and fix it. About three months after that he told my wife, and two years after he told me, that he would only give $100." The plaintiff then introduced evidence, which was received against defendant's objection, to show irregularities in the tax proceedings on which defendant's tax title was based.

The defendant *Hoeveler* testified in his own behalf, that he took possession of the premises in October, 1863, about half a year after he got the tax deed; that he owned the first (Kemerling) mortgage when he went in; that he took possession under the tax deed, and had occupied since under that deed, and not under any other claim; that about a month after he entered, he saw Mrs. Berg at the premises; he told her then he would try to buy the Kemerling mortgage; she thought the land was worth more than the incumbrances, and he told her he thought it was not; there was no conversation about her giving a deed after ten years, nor anything said about his paying the second mortgage. "I went to the plaintiff to buy his mortgage, and offered him $100; he said before he would take that he would lose the whole; I told him that I had the tax deed; that was all that was said at the time, and I have never spoken to him since." The witness also testified: "I had a conversation (with Mrs. Berg,) that I was willing to buy the premises if she could give a good deed. We went to see if she could give a good deed, and she could not; the conversation was, if she could give me a good deed, I was willing to pay all incumbrances. This was before I was in possession, and about half a year before I bought the tax deed." On cross-examination, he testified: "I think I had a conversation with

Mrs. Berg, at Cross Plains, about half a year before I got the tax title. I said I would take the property and pay all incumbrances, and Mrs. Berg agreed to let me have it. Mrs. Berg came up (to Madison) and spoke to me and Mr. Pfaff and Pickarts, and they said she could not make a deed for ten years. I did not bargain for the mortgage before I got the tax deed." *Question:* "Did you not tell Mr. Lamb, in his house last spring, that you got the tax deed to save the mortgage you got of Kemerling?" *Answer:* "I don't know whether I said so or not." On his direct examination resumed, he said: "I never agreed at any time to buy the property of Mrs. Berg; I gave it up after I found she could not give the deed. The first talk with her was at Cross Plains." Mrs. Berg, recalled for the plaintiff, testified: "I saw him (defendant) at Cross Plains, as he talks; there was something said then about his taking or buying the house; this was two years before I spoke to him on the premises; saw him at Cross Plains last year. Don't know whether we ever talked about the place in Cross Plains." This testimony, and that of *Hoeveler* on his cross-examination, were received against the objections of his counsel. The other evidence need not be stated.

The plaintiff thereupon moved for leave to amend his complaint, by alleging further, substantially as follows: that defendant, before purchasing his tax title and the Kemerling mortgage, or taking possession of the premises, applied to Adelaide Berg, at Cross Plains, to purchase the premises; that thereupon it was agreed between them that *Hoeveler* might have the premises for the amount of the tax incumbrance upon them, and the amounts due on the mortgages to Kemerling and plaintiff, and *Hoeveler* agreed to take the property on those terms, and pay off plaintiff's mortgage; that no further communication was had between said parties until *Hoeveler* had purchased the tax title and Kemerling mortgage, and taken possession of the premises; that

said Adelaide afterwards went to Madison, and found *Hoeveler* on the premises, whereupon he renewed his promise to her, and gave no intimation that he was, or claimed to be, in possession, otherwise than in pursuance of said agreement at Cross Plains; that they thereupon went to consult a friend, who informed them that said Adelaide could not make a deed until her husband had been dead ten years; that thereupon said Adelaide told said *Hoeveler* that she would make a deed at the end of that time; that *Hoeveler* did not express any dissent to her at that time or afterwards, but suffered her to leave with the understanding that he would fulfill his promise and pay the plaintiff's mortgage, relying on the title he then had, and her promise of a deed at the end of ten years; that *Hoeveler* never informed said Adelaide that he would not pay the plaintiff's mortgage until after the expiration of three years from the recording of said tax deed; that soon after said last mentioned conversation, *Hoeveler* called upon the plaintiff and offered to buy his mortgage, if he would throw off the interest due, to which plaintiff assented, and an agreement to that effect was then and there made between said parties, which agreement *Hoeveler* has failed to fulfill, etc.; and that since the expiration of the three years from the recording of the mortgage, he denies that it is any lien upon the property, etc.

The court found, *inter alia*, the facts alleged in the above described amendment to be true, but that those alleged in the 7th paragraph of of the original complaint were not proven. As to the tax proceedings, it found that the warrant was duly signed by the clerk, and not by the mayor of the city; that the affidavit of the posting of notices of sale only states that the notices were "posted according to law;" and that the delinquent list for that year was not signed by the treasurer, but the affidavit attached thereto was so signed.

It further found that the rents and profits of the premises, since *Hoeveler* took possession, were $180; that the amount paid for the tax title was $50, the interest on which would be $13.39; that the taxes and insurance paid by him amounted to $40.97; that he had made improvements amounting to $349; and that the amount due on the Kem-erling mortgage was $205.34, and on the plaintiff's mort-gage, $218.75. As conclusions of law, he held that the value of the improvements and the irregularities in the tax proceedings were immaterial, in view of the other facts found; that the plaintiff should have leave to amend his complaint in accordance with his motion, to make it accord with the facts proven; and that he should have the relief specially demanded in the complaint. Judgment was rendered accordingly; and *Hoeveler* (having duly excepted to the finding) appealed.

*Hopkins & Foote*, for appellant:

The plaintiff claimed the right to impeach the tax deed for irregularities, only on the ground that defendant, after he took possession and before the three years expired, agreed to pay this mortgage and not to take advantage of the stat-ute, and this was the only reason why he did not bring suit to annul the tax deed before the limitation had run. No proof of such an agreement having been offered, the court should have dismissed the suit, and not have allowed the amendment. It was not a case of *variance*, but one in which the cause of action was wholly unproved. R. S., chap. 125, sec. 35; 17 Barb., 274; 15 Wis., 641, 663–4; *Catlin v. Hansen*, 1 Duer, 327; *Fagen v. Davison*, 2 id., 158. The amendment, if allowed at all, should have been ordered before the testi-mony was admitted. *Gill v. Rice*, 13 Wis., 549. The allow-ance of it after the case was closed, was such an abuse of discretion as should reverse the judgment. 2. The testi-mony does not show any contract of purchase, or any taking

possession after the contract, so as to take it out of the statute of frauds; nor any facts which constitute an estoppel. *Campbell v. Smith*, 9 Wis., 305. 3. The pretended contract between Mrs. Berg and *Hoeveler*, made *after* the latter had taken possession, is void under the statute of frauds, and the court erred in admitting evidence of it. *Fairchild v. Rasdall*, 9 Wis., 379. 4. The testimony shows that plaintiff knew, more than two years before the limitation had run on the tax deed, that *Hoeveler* refused to pay the mortgage, and he should have commenced his suit before the time expired. 5. It is clear, from *Hoeveler's* testimony, that whatever negotiations he may have had previously with Mrs. Berg, he abandoned the thought of purchasing from her, and actually took and retained possession under his tax deed. If the tax title proves to have been bad, he is entitled to the value of his improvements. *Green v. Dixon*, 9 Wis., 539; *Mickles v. Dillaye*, 17 N. Y., 82; Hilliard on Mort., 297; 4 Kent, 165.

*Spooner & Lamb*, for respondent, contended, that upon the facts in proof, the plaintiff was entitled to a judgment providing for the payment of his mortgage as a first lien upon the premises. What *Hoeveler* paid to Kemerling, and what he was obliged to pay on account of the tax lien, was so much paid by him towards the purchase of the property under his agreement with Mrs. Berg. The promise to pay the plaintiff's mortgage (which was the residue of the purchase money), made in the first instance to Mrs. Berg, would enure in equity to the benefit of *Schumaker*, even if it had not been repeated to him. *Kimball v. Noyes*, 17 Wis., 695. 2. We question the right of one of two mortgagees to buy in a tax title and cut off the lien of the other. If the first mortgagee has that right, the second has it also; and there would be a race of time between them. However this may be, the contract made by *Hoeveler* with Mrs. Berg placed him in such a relation to her and the holders of the

mortgages, as to disable him from buying in a paramount title, especially as that title was founded upon the non-payment of taxes which he agreed to pay as part of the purchase money of the property.    3. As to the amendment allowed, counsel cited R. S., ch. 125, secs. 33, 34; 6 How. Pr. R., 390; *School Dist. v. Macloon,* 4 Wis., 89; *Fox River Valley R. R. Co. v. Shoyer,* 7 id., 365; *Fisk v. Tank,* 12 id., 277; *Bonner v. Home Ins. Co.,* 13 id., 677; *Mead v. Bagnall,* 15 id., 156; *Hitchcock v. Merrick,* id., 522; *Herrick v. Graves,* 16 id., 157; *McRoberts v. Steamboat Henry Clay,* 17 id., 101; *Edson v. Hayden,* 18 id., 627; *Pacquette v. Pickness,* 19 id., 219; *Hanson v. Michelson,* id., 498; *Gill v. Rice,* 13 id., 554; *Danehy v. Tyler,* 15 How. Pr. R., 399; *Harmony v. Bingham,* 1 Duer, 209; *Fort v. Gooding,* 9 Barb., 371; *Pratt v. Hudson River R. R. Co.,* 21 N. Y., 313; *McComber v. Granite Ins. Co.,* 15 id., 495; *Catlin v. Gunter,* 11 id., 368.

PAINE, J.    Whatever may have been the secret intentions of the defendant as to claiming under his tax title at the time he entered upon the premises, it sufficiently appears from the evidence that Mrs. Berg supposed he had entered in pursuance of his understanding with her that he was to take the property and pay off the incumbrances. It appears, also, that he must have been aware that she was acting upon this supposition. Because she came in and went to him for the purpose of executing the papers, and then, instead of telling her that he had abandoned all idea of carrying out his promise to her, and had bought a hostile title and entered under that, he went with her to see if she could give a good deed. And he himself testifies that he only gave up the idea of buying of her after he found that she could not give a good deed. This was sometime after he had entered, and the statement is to some extent repugnant to his declaration that he entered solely under his tax title; for it shows that

at the time he entered, he was relying on, and still intending to carry out, his arrangement with 'Mrs. Berg. It was entirely natural for her to suppose that he had entered in pursuance of that arrangement, and his conduct was such as to confirm that supposition. If, then, after he found out that she could not give a good deed until the expiration of ten years, he decided to abandon the idea of buying of her, and to rely on his tax title in hostility to her interests, it was incumbent on him to so inform her. But instead of that, she testifies that she told him he could stay in the house and she would give him a deed as soon as she could, and that he still promised to pay the *Schumaker* mortgage. This was a direct assumption on her part that he had entered under her authority, and that she had the right to dispose of the possession. And he made no claim or intimation to the contrary, but still promised to pay the *Schumaker* mortgage. This conduct was calculated to deceive her, and throw her entirely off her guard against his tax title. And it should estop him, as against her, from setting up his tax title, after she had thus been lulled to sleep on her rights until the expiration of the three years of limitation.

There being, therefore, good ground for an estoppel in favor of Mrs. Berg, it follows that the plaintiff's mortgage should be enforced; because that is the only way that her interests can be protected. For if the mortgage is not collected from the land, it will be collected out of the personal estate which was willed to Mrs. Berg.

The amendment of the complaint to make it conform to the facts proved, though perhaps a striking illustration of the liberality of the present practice, was yet within the rule established by the authorities upon that subject; many of which are cited by the respondent. It will be observed that there was no change whatever of the cause of action. The cause of action was the the foreclosure of a mortgage, upon

property of which the defendant was in possession. The complaint anticipated and sought to avoid a defense by alleging one ground of estoppel. The facts proved, showed that this defense should be avoided by another ground of estoppel; and the complaint was amended accordingly. It was probably unnecessary for the complaint to have anticipated this defense at all; and then, when the defendant had set up his tax title, it could have been avoided by the proof, without any replication setting up the facts relied on in avoidance. But the complaint having undertaken to set forth all the facts, there was no objection to allowing the amendment.

In all such cases, if the defendant is taken by surprise, or is in any way liable to be prejudiced, he should apply to the court below for a continuance, new trial, or other appropriate relief; and if that is denied, he can have his remedy.

The judgment of the court below does not rest upon the ground that a binding contract by the defendant to pay this mortgage, was sufficiently proved to be enforced as such, but upon the ground of estoppel. And on that ground we think it should be affirmed.

*By the Court.*—Judgment affirmed, with costs.